## Comer v. Comer

*Michael Egnal*, for plaintiff.
*John McAllister*, for defendant.

CANUSO, *J.*, June 11, 1979—Plaintiff Marie Comer filed this action in equity against defendant, John Comer to enforce a separation agreement entered into by the parties in January 1973. Plaintiff alleges a failure on the part of defendant to make payments to her in in accordance with the said agreement and to enter into a new agreement to extend the original agreement.

Defendant filed an answer and new matter denying liability to which plaintiff duly replied.

After a careful consideration of the testimony in the light of present circumstances we make the following

## FINDINGS OF FACT

1. Plaintiff and defendant were married on February 2, 1952 and the marriage between them still subsists.

2. No children were born of this marriage.

3. The parties separated in November of 1972 and in January of 1973 they entered into a written agreement a copy of which is attached to plaintiff's complaint as Exhibit "A".

4. The agreement provides in pertinent parts as follows:

"Fifth:

Husband agrees to pay to wife as alimony the sum of Three Hundred Dollars ($300.00) per month, a pro rata payment to be made at the execution of this agreement, and next payment due and payable to wife February 1, 1973, and monthly after. All support payments shall terminate upon death or remarriage of wife, whichever first occurs. It is further understood and agreed that the alimony of Three Hundred Dollars ($300.00) per month will be for a five-year period of time only, and upon the expiration of the said five year period of time, the parties will enter into a new Agreement, depending upon their then circumstances as to further payment of support or alimony for wife. It is specifically understood and agreed that these weekly payments shall be deducted by husband as alimony on his Federal Tax returns and shall be included by wife as a receipt of alimony on her Federal Tax returns. In the event that any future regulation of the Board of Internal Revenue precludes the inclusion of alimony as a proper deduction as set forth in the present existing Internal Revenue Code, husband's obligation hereunder shall be modified.

Notwithstanding the foregoing provision, husband agrees to reimburse wife one-half (½) of all sums paid by reason of the inclusion of the said payments in her Federal Tax return, not exceeding Three Hundred Dollars ($300.00).

"Seventh:

It is the intention of the parties that all jointly owned assets, other than household furnishings, but including stocks, bonds, savings accounts, and cash on hand in the sum of approximately Twenty-six Thousand Dollars ($26,000.00) which, after a deduction for moving expenses in the approximate sum of Nine Hundred Dollars ($900.00), shall be equally divided between the parties. Accordingly, the parties shall attach hereto what is referred to as 'Exhibit A' which will become an integral part of this Agreement, a list of all personal securities and cash owned by the parties, and a division of the assets shall be made as follows:

Cash: All cash will be divided evenly between the parties.

Stocks and Bonds: All stocks and bonds jointly owned shall be divided between the parties by each of the parties hereto endorsing for the other one-half (½) of the amount of stocks or bonds owned by them as tenants by the entireties.

5. Defendant made payments of $300 each for the first 27 months only and has failed to make any payments for the succeeding 33 months for a total due and owing of $9,900.

6. Defendant has failed to pay any of plaintiff's tax liability at the rate of $300 per year or a total due and owing of $1,500 for five years.

7. The jointly owned assets, including stocks, bonds, savings accounts and cash, but excluding the household furnishings, were distributed in ac-

cordance with the terms of the agreement and therefore nothing is due and owing to defendant by plaintiff.

8. The household furnishings, excluded from the terms of the agreement, were divided pursuant to the understanding of the parties and therefore defendant is not entitled to any credit.

9. Although the five year term of their agreement has expired the parties have failed to enter into a new agreement as provided therein."

## DISCUSSION

Defendant, although admitting the validity and enforceability of the agreement, contends that plaintiff breached the agreement by failing to equally divide a jointly owned savings account the parties had at Philadelphia National Bank and that she appropriated to her own use, and to his exclusion, all items of household furniture, as a result of which defendant is entitled to a credit and, further, that the provision of the agreement providing for the parties to enter a new agreement at the end of a five year period is unenforceable. We disagree with these contentions.

As to the jointly owned savings account plaintiff testified that upon separation she gave defendant $13,000 which represented one-half of the proceeds of this account. Defendant, however, claims there was a balance of over $32,000 in this account and therefore his interest was at least $16,000 and that he is entitled to a credit for the difference.

Plaintiff's explanation, which this court finds credible, is that although this account did contain in excess of $32,000 at one time, she deducted for certain expenses as provided by their written agreement. Plaintiff deducted $900 for her moving

expenses and also approximately $3,000 to pay for an automobile that she purchased with the consent and approval of defendant. She also claimed that each had withdrawn $1,000 from the account.

Although there might be some mathematical discrepancy in plaintiff's explanation, we find that defendant's is less convincing and that the best evidence as to the true amount was that which was set forth in paragraph "Seventh" of their agreement. It was clearly stated to be approximately $26,000.

The same could be said regarding the division of the household furnishings. These items were specifically excluded from the separation agreement and plaintiff testified that the parties agreed that plaintiff would take what she needed and the remainder would be made available to defendant. However, defendant repeatedly told plaintiff he did not want any of the furniture and, after taking what she needed, plaintiff sold the remainder for $300, half of which she gave to defendant. Although defendant subsequently saw plaintiff, he made no demands or complaints regarding this distribution.

Defendant never complained to plaintiff about any shortages as to the division of their assets. Instead, he substantially complied with the provisions of the agreement by making payments for the first 27 months and, according to his testimony, only ceased paying because he saw plaintiff in the company of another man. It was only after this incident and in these proceedings did he first claim credit for the alleged discrepancy in the bank account and for furnishings he did not receive. Although defendant explained that plaintiff handled all of the parties' financial matters and that he was unaware of the amount involved, we find that he had full knowledge of what occurred. Defendant is an accountant and he impressed this court as an

intelligent person. We found his explanation devoid of credibility.

Accordingly, defendant is obligated to pay plaintiff, pursuant to the terms of the agreement, the payments for the 33 months he failed to pay at the rate of $300 per month together with the tax liability he failed to pay for five years at the rate of $300 per year.

As to defendant's final contention that the provision of the agreement providing for the renewal of the agreement as it pertains to support or alimony is unenforceable, we find it to be without merit. Defendant admits the validity and enforceability of the separation agreement. The intent and purpose of this provision appears to be clear and obvious. Under the circumstances it was fair, reasonable and explicit. In the absence of fraud, accident or mistake, which was neither alleged nor proven, we hold that there appears to be no reason why such a provision should not be enforced.

It is well established that equity has jurisdiction to enforce a contract in order to protect property rights accruing thereunder. This is a proper case for the application of this principle. There is precedent as to the method to be used, although the action was in assumpsit, in the case of McGee v. McGee, 179 Pa. Superior Ct. 361, 115 A. 2d 409 (1955). In McGee, where the parties were unable to agree on a fair sum for support which was provided for, inter alia, under a separation agreement, the Superior Court approved the application of general support principles in arriving at the amount to be paid. Since the main object and purpose of the subject provision in the instant case is to provide funds for the support of plaintiff, we believe that general support principles should also be applied in order to determine the amount of payment, if any, to be made.

Because of the passage of time and insufficiency of evidence pertaining to the present circumstances of the parties, we will hold an evidentiary hearing for this purpose within the next 30 days, unless otherwise extended by agreement of the parties.

## CONCLUSIONS OF LAW

1. Equity has jurisdiction in this case.

2. The written agreement entered into by the parties in January of 1973 is valid and enforceable.

3. The terms of the agreement may be specifically enforced.

4. There has been no breach of the agreement by plaintiff.

5. Defendant failed to fully comply with the terms of the agreement.

6. Defendant is not entitled to any credits due to the distribution of the jointly held assets or household furnishings of the parties.

7. Equity has jurisdiction to establish the fair sum for support where it is provided for by the agreement and the parties are unable to agree as to the amount thereof.

## DECREE NISI

And now, June 11, 1979, judgment is entered in favor of plaintiff and against defendant for the amount due and unpaid under the terms and provisions of the agreement through January 1978, to wit, $11,400, plus interest at the annual rate of six percent from February 1, 1978.

The amount payable under the terms of the agreement subsequent to the above date shall be determined as set forth in our adjudication.

This decree shall become final unless exceptions are filed within ten days after its entry.

Each party to pay its own costs and counsel fees.

CANUSO, *J.*, March 21, 1980—

## SUPPLEMENTAL ADJUDICATION

Pursuant to our adjudication of June 11, 1979, an evidentiary hearing was held in the above matter to determine the amount of support/alimony payable under the terms of the agreement between the parties subsequent to January, 1978.

After a careful consideration of the testimony and evidence presented, in the light of present circumstances and conditions, we make the following:

## FINDINGS OF FACT

1. In January, 1973, when the parties entered into the written separation agreement, plaintiff, Marie Comer, was unemployed and defendant John Comer was employed earning approximately $28,000 per year.

2. Plaintiff obtained employment in 1973 at an income of approximately $10,500. This income has steadily risen and in 1978 she had a gross annual income of approximately $15,000 and she earned approximately $18,500 in 1979.

3. Defendant's gross annual income has increased yearly and in 1978 he had a gross annual income of approximately $38,000. He earned $40,000 in 1979 and his earnings will remain the same for 1980.

4. Plaintiff's present net weekly salary is $230 and her normal every day living expenses total $207 per week.

5. Defendant's net weekly salary is $430. He pays $430 per month for the condominium in which

he lives plus the other normal every day living expenses.

6. In addition to her income, plaintiff owns the following assets:

a. A savings account in the amount of $2,667.29.

b. An undetermined amount of stock in General Electric Company valued at $50 per share.

c. Approximately 115 shares of stock in Elfun Trust valued at $30 per share.

.d. Thirteen shares of stock in Singer Corporation of undetermined value.

e. Four (4) shares of stock in IBM valued at $65 per share.

f. A 1970 Dodge Dart automobile.

7. In addition to his income, defendant owns the following assets:

a. A condominium in which he lives located at Valley Forge Towers, which he purchased in 1975 for $48,000 with a mortgage of approximately $41,000.

b. One acre of undeveloped land in Arizona purchased nine years ago for $2,000.

c. A 1973 Jaguar automobile.

d. Approximately 10 shares of stock in General Electric Company valued at $50 per share.

e. Approximately 3 shares of stock in Elfun Trust and valued at $30 per share.

f. Contributions to his pension plan at General Electric, present worth of approximately $15,000.

## DISCUSSION

We originally found the agreement between the parties to be valid and enforceable. Paragraph "Fifth" of said agreement provided, inter alia, that the defendant-husband shall pay the plaintiff-wife,

alimony/support in the amount of $300 per month for a 5-year period upon the expiration of which the parties were to enter into a new agreement as to "future payment of support or alimony for wife."

Inasmuch as the parties have failed to agree as to this part of provision "Fifth" of the agreement, we have held that the court can determine the amount of support or alimony, if any, that shall be paid. We do so by applying general support principles. See McGee v. McGee, 179 Pa. Superior Ct. 361, 115 A. 2d 409 (1955).

At the time of the execution of the original agreement defendant was employed by General Electric and earning approximately $28,000 per year. Plaintiff was unemployed. Since then, after distribution of their joint property pursuant to the provisions of the agreement, plaintiff has moved to Henrietta, New York, and is presently employed by Alliance Tool Corporation and earns approximately $18,500 yearly. Defendant has continued to work at General Electric and his salary has increased to approximately $38,000 in 1978 and $40,000 in 1979 and presently.

It is evident that the intent and purpose of the parties at the time of the execution of the agreement, as it pertains to paragraph "Fifth", was to the effect that defendant was to pay support/alimony to plaintiff. The terms "alimony" and "support" are used interchangeably so that it is fair to infer that it was intended they have the same meaning.

Although defendant's income has increased from $28,000 per year to $40,000 per year, plaintiff's financial condition has improved considerably. She is presently earning more than $18,000 per year whereas five years ago, in January, 1973, she was

unemployed. Her share of the distribution of the joint property was at least as much as his, if not more. They both appear to be in good health.

Although plaintiff is not destitute, it seems to us that she would be entitled to some payment because the agreement is silent as to the termination of any payment except for death or remarriage of plaintiff. On the one hand, when we compare her present condition and circumstances she is not in need or as wanting as she was then. On the other hand, defendant obligated himself to pay support/ alimony over a five-year period even in contemplation of divorce and not conditioned upon the welfare or financial condition of the plaintiff. Therefore, since this obligation has not been terminated by any circumstance or event provided in the agreement, we believe defendant is legally bound to continue to make payments to plaintiff for support/ alimony.

In consideration of all these factors, in the light of present circumstances, we believe that $150 per month would be a fair and reasonable sum that defendant shall pay plaintiff effective February 1, 1978 and to continue until terminated as provided in the agreement. Moreover, since all the other terms and provisions of the original agreement are still in force, that part of paragraph "Fifth" of the agreement pertaining to Federal Taxes shall be applicable.

It is apparent that defendant would be delinquent since February 1, 1978 and that he should be given a reasonable time to become current in his payments. His failure to do so will subject him to the appropriate legal action to be taken by plaintiff to recover.

## CONCLUSION OF LAW

The sum of $150 payable by defendant to plaintiff is a fair and reasonable amount for support/alimony under the facts of this case.

## DECREE NISI

And now, March 21, 1980 it is hereby ordered and decreed that defendant John Comer shall pay plaintiff Marie Comer the sum of $150 per month effective February 1, 1978. This decree shall become final unless exceptions are filed within ten days of its entry.